first for Mr. Patel. May it please the Court, hearing Patel on behalf of the appellant, Hopewell Risk Strategies. Time permitting and at the court's directives, I would like to address the issues that justify reversal in the following order. First, the trial court's clear error in applying the election of remedies doctrine. Second, the trial court's clear error in misapplying the law that applies to determining if a contract breach was material. And third, the trial court's clear error in relying on unreliable testimony to justify key findings of fact to support the judgment. So first, turning to this issue of election of remedies, this case involves a breach of contract claim over a settlement agreement. The underlying lawsuit between the parties involved the extent to which Mr. Turner, one of the appellees, misused the Moody Review trade names that were valuable in the medical bill review industry. Back in 2009, an entity that Mr. Turner was the sole shareholder of named Moody Review Inc. was acquired, all of its assets at least were acquired, by Hopewell Risk Strategies, including expressly as a term of the agreement the Moody Review name and brand. Now, shortly after the sale occurred, Mr. Turner started a competing business in which he also used the Moody Review name even though his prior entity had sold the rights to use that name in the marketplace to Hopewell. And he did so while he was also serving as an officer at Hopewell. That was a core issue in the underlying case because the method by which Mr. Turner was able to convince Hopewell's clients that his other entity, the competing entity, was legitimate and there was nothing to be worried about, no red flags for having to send a check to a different entity, was because of the misuse of the same brand. It was essentially a passing off case. That's what led to the key term in the settlement agreement that we're arguing about right now. In consideration for making a reduced amount of monthly payments from the original acquisition agreement, Hopewell agreed we'll still pay a substantial amount to Mr. Turner. But as agreed in the settlement agreement, Mr. Turner warranted and agreed that he and his other two entities, CPST and Health Cost Control, would not use the Moody Review brand, so the trade name Moody Review, any of the related names or any derivatives. The settlement agreement in particular didn't include a grace period. The obligation wasn't simply limited to providing notice to others that CPST is no longer affiliated with them. Mr. Patel, I find Judge Wehrlein's reasoning pretty persuasive on all of this. Why didn't you consent to try this issue? And it was tried, and he found that these slight uses of Moody Review were not material, and you kept paying even though you knew about it. So why isn't he right? So if I can answer that in two parts. First, regarding the payments that continue, one of the reasons why Hopewell asserted the affirmative defense of prior material breach related to an auto attendant recording that was documented shortly after the settlement agreement, and yes, Your Honor is correct, Hopewell continued to make payments. Now, under Texas law, ordinarily if a party understands that there's been a breach but elects to continue to treat the contract as continuing, then the affirmative defense can't be raised. So in that part, Judge Wehrlein's reasoning is very persuasive. That is what Texas law requires. But there's a limitation, and that limitation is that this election of remedies doctrine must be actually pled to be used as a counterdefense against a prior material breach affirmative defense. And it wasn't pled here. So then the only other issue remaining is the second part of Your Honor's question. Why was it not tried by consent? Well, the issue wasn't tried by consent under the factors that this court has delineated to determine whether there was any sort of implied consent. At no time at trial, at no time in any of the arguments or the evidence did anybody ever mention election of remedies as a counterdefense. Did anyone, for that matter, ever mention that there was even a counterdefense alleged at all, no matter what it might be? Can you address material breach? Yes, Your Honor. So in terms of the issue of whether the material – the auto attendant reporting was a material breach, our first contention is that the trial court erred by misapplying the applicable law. Now, under Texas law, to determine if a breach is material to justify this affirmative defense, there are a series of factors that must be considered. And those factors were not considered and are not part of Judge Warline's reasoning and analysis. So the factors in particular are, first, whether the party, Hopewell in this case, was denied a benefit that it reasonably expected under the contract. Second, was there any sort of way to determine that there was compensation that could be made to address that breach without frustrating the entire purpose of the contract. There is another factor that relates to forfeiture, which isn't relevant under these facts. But then there's also two additional factors, whether there was any likelihood of a repeat breach, and finally, whether there was any sort of bad faith conduct. Now, these are the factors enumerated under Texas law. Both sides agree that these are the factors that apply, but Judge Warline's analysis instead focused on a number of other issues instead that led to Judge Warline's determination. So instead of addressing these points, Judge Warline pointed out several reasons why he thought that this auto-attendant reporting was not material. Now, if I can address those in turn, in general, the first one was essentially the election of remedies. Judge Warline pointed out, well, it couldn't be material because Hopewell continued making the payments. That is in essence the election of remedies doctrine, which under Texas law is a counterdefense. It's not part of the materiality analysis. It doesn't determine whether the breach is material or not. It's not relevant to that point. It is relevant to whether that affirmative defense can even be asserted or can be the basis to prevail, but that, as I've mentioned, has to be pledged. If it's not pledged, then it's a waived doctrine, and that's the issue here. But then Judge Warline also explained, well, there was no notice or demand that Hopewell sent to Mr. Turner or CPST after it discovered that this auto-attendant reading continued to commingle, continued to pass off the two entities as related. That's also true. Hopewell continued making the payments but didn't immediately send a notice or demand. Again, that's not a factor for materiality, and it would actually create a sort of disruptive effect if a party that is simply seeking to defend against a breach of contract claim, so an affirmative defense, has an obligation imputed by law to affirmatively take action such as providing notice and demand. That certainly might be relevant to determine whether a party is entitled to affirmative relief, but when it comes to an affirmative defense, taking action, especially after a settlement agreement just resolved one suit that would almost invariably lead to another suit, is not something that the law has ever – under Texas law – has ever been recognized as relevant to the materiality test for this affirmative defense. In addition, Judge Warline mentioned that there was no evidence of any damages or harm to Hopewell, and so he theorized that, well, that means it couldn't have been a material breach because there's no evidence of damages or harm. Again, that's not an element of the affirmative defense. It doesn't relate to materiality factors. But in particular in this case, the actual interest at stake is very unique, and it's further sort of defined by the underlying claims that the settlement agreement resolved. One of the key underlying claims was based on the Lanham Act. So unfair competition under the Lanham Act, essentially passing off your services as being affiliated with another entity's services to sort of make additional gains in the market by confusing the market of the affiliation. Well, that type of claim or that type of interest is not readily susceptible to clear damages evidence in the first place. That's why the statute doesn't even require damages as an element to prevail under a claim for unfair competition. Furthermore, Judge Warline mentioned, well, nobody provided any post-settlement evidence of actual marketplace confusion. But again, it's a misunderstanding of the interest at stake. This Court has held consistently that when it comes to issues like passing off your goods as affiliated with another, that type of unfair competition context, the key is whether there's a likelihood of confusion and that the likelihood of confusion can be established persuasively with evidence of actual past confusion. Now, in this case, at trial, there was uncontested evidence that prior to the settlement agreement, so leading up to the settlement agreement, there was actual prior confusion in the marketplace because of Mr. Turner's sort of extended misuse of the Moody Review name. So the only evidence that addresses whether there was a likelihood of confusion, so the actual interest at stake, was there and it is uncontested in the record. Now, Judge Warline appears to essentially have viewed that evidence of prior actual confusion as evidence that shouldn't be used in this case because of the release in the settlement agreement. But as explained during trial, it wasn't being offered to try to relitigate the underlying claim, but rather to provide the basis to establish the materiality of the one provision of the settlement agreement that directly addresses that interest. It was important to Hopewell, it was a benefit Hopewell reasonably expected by signing the settlement agreement that Mr. Turner was not going to be using the Moody Review brand in connection with his competing entity, CPST. It was specifically phrased as Mr. Turner and his affiliated entities weren't and agree that they should not use those names. That was something that was at issue at trial. It wasn't something that would have caught someone by surprise, and there was nothing in the agreement, which presumably the parties could have negotiated, that would allow some sort of grace period or a period of time to comply or bring yourself into compliance with that provision. The appellees agreed exactly as it was written, and so Hopewell had a reasonable expectation that the benefit it would get from the settlement agreement is that from that day forward and in perpetuity, Mr. Turner and his entities would not use the Moody Review brand in the medical bill review industry. And that's one of the key reasons why it should be determined as a material breach, even though looking at this without the context might lead someone to say, well, it may not be that important, it was only a few weeks. That's not, in sort of a third-party context, maybe material, but the materiality factors focus on the specific parties and what they agreed, not what someone unrelated to that particular transaction might think is important or relevant. For example, there's a case that's usually still taught in first-year law school, Hamer v. Sidway. It involves an uncle who agreed to pay a nephew money for the nephew to stop smoking. That was the bargain for exchange for the uncle is the nephew stops smoking. Now, if the nephew has a cigarette by accident a week later, most people would probably consider that no big deal. But to analyze the materiality of that breach, the context is absolutely essential, and what the uncle in that example was bargaining for is an immediate and absolute cessation of smoking. Is whether there was a material breach a fact question? So whether the materiality factors were applied correctly is an issue of law. If there are fact findings, those are fact questions, and in general the court should defer to factual findings by the district court. Here, so the factual findings that, for example, Hopewell didn't provide notice or demand, we're not contesting that. That was a factual finding by Judge Warline that is not an issue and is not being disputed. But whether that fact finding has any relevance to the legal issue of whether there was a material breach, that's what this court has the ability to review. So if the jury had found there was no material breach, would you be making the same arguments? If the jury had found that there was… No material breach. It depends on how the jury was instructed. If the jury were properly instructed as to what the materiality factors, we wouldn't be making this argument. Here, the issue is the judge did not properly apply the factors. And how do we know that? Looking at the findings and conclusions, none of the factors that I particularly – that I just addressed, Your Honor, the materiality factors under Texas law are discussed in connection with the fact findings. So all the fact findings that relate to – that underlie Judge Warline's conclusion that it was not a material breach don't… Does he misstate the law of what material breach is? In the conclusions of law section, he does not misstate what the materiality factors are and that they should apply. The disconnect is between the findings of fact that he did issue and what the law is. And if those are not connected, then it is a misapplication or a misunderstanding of the applicable law as it relates to this case. It's not – we're not contesting that he got the conclusion of law wrong, but that it was not the law that he actually applied to reach his decision. So as far as what the court should do, we've argued in our briefing that the actual record is sufficient. It was developed sufficiently to establish that Hopewell did have a reasonable expectation that the benefit it would get from the settlement agreement is an immediate cessation of misusing the Moody Review name. So if the court does find that persuasive, that that's the only conclusion permitted by the record, and that the court has the conviction that that is the right answer, then reversing and rendering a take-nothing judgment would be the outcome. But alternatively, if the court doesn't have the conviction that there is only one way to look at the facts when properly applying the law, under Pullman standard, the U.S. Supreme Court says that those are the situations when remand is proper, essentially allowing the district court to have the opportunity to then reevaluate the evidence that is at issue under the proper factors. So we're asking primarily for reversing and rendering a take-nothing judgment, but also alternatively – Hopewell is very clear that at a bare minimum in this case, reversing and remanding so that the district court has a chance to correctly apply the applicable materiality factors should be the proper outcome. As my time is running out, I'd like to – are there any other questions in particular? Thank you very much. Thank you. May it please the Court? Yes, sir. Your Honor, Josh Borsolino for the Appellees, Stephen Turner, CPST Incorporated and Health Cost Control Incorporated. I'm going to go out of order from the way that Hopewell presented. As it did in its opening brief and in its reply brief, as well as its oral argument, Hopewell continues to lead with the election of remedies issue. The threshold issue in this case is the prior material breach issue. The district court found that there was no prior material breach that excused Hopewell's performance, and that even if there was, Hopewell elected its remedies. And so if this court finds that there was no clear error in the district court's finding of no prior material breach by the Turner parties, there's no need to reach the election of remedies issue. So I'll start with materiality. With respect to the prior material breach issue, Hopewell makes two separate arguments. First, it contends that the district court erroneously applied the law. That is incorrect. The court correctly assessed the materiality. It cited the five factors that are set forth in Section 241 of the restatement on page 473 and 474 of the record. And then it went on to analyze several of those factors, and I want to talk about its analysis. But first, with respect to this argument by Hopewell that because the court did not go through each and address all five of the factors, that reversal is warranted. That's simply not the case under Texas law. The restatement, Texas Supreme Court precedent, and this court's precedent applying Texas law all recognize that these five factors set forth in the restatement need not be present in each case and need not be analyzed in each case. Comment A of Section 241 of the restatement on contracts says that the standard for assessing materiality is, quote, necessarily imprecise and flexible. The Texas Supreme Court has recognized this. In a case entitled Hernandez v. Gulf Group Lloyds, which is 875 Southwest 2nd, 691, the Texas Supreme Court, when assessing whether there was a prior material breach, cited the five factors in the restatement and only addressed one of them. It only assessed whether the non-breaching party suffered any harm, and it concluded that the non-breaching party did not, and thus the breach was not material. It did not discuss the remaining four factors in the restatement. And the Texas Supreme Court in Hernandez went on to say the less the non-breaching party is deprived of the expected benefit, the less material the breach. And this court has also recently articulated the same sentiment. In the case Matter of Dallas Roadster, which is 846 F. 3rd, 112, it's a 2017 Fifth Circuit case, applying Texas law, the court cited the five factors in the restatement, and it rejected the exact same argument that is being made by Hopewell here. It said, to the extent that Roadster's argument is that the district court erred by not explicitly addressing each factor for each of the alleged breaches, we disagree. And it found that the district court had properly analyzed the test for materiality. I want to talk about the lower court's conclusions and how those do apply to the factors of materiality. The primary focus of the district court was whether Hopewell was harmed by any act or omission by the Turner parties, and it found that it was not. And that conclusion, that Hopewell suffered no harm resulting from either of the claimed breaches, the issue related to DakotaCare or the issue related to the auto attendant recording, the fact that the court found that neither one of those caused any harm to Hopewell is relevant to the first two factors of the restatement, which is the extent to which the injured party will be deprived of the benefit and the extent to which the injured party can be adequately compensated for the benefit that it was deprived. The court found that neither the DakotaCare, anything having to do with DakotaCare, or the auto attendant greeting caused any harm to Hopewell, and therefore Hopewell had not been deprived of anything. There was also, and obviously with respect to this prior material breach affirmative defense, it was Hopewell's affirmative defense. They had the burden of proof. I want to talk about what evidence it did not present, particularly with respect to the issue of harm or any prejudice that it suffered. There was no evidence of any harm and no evidence of any causal connection between any act or omission by the Turner parties and any damages that could have flowed from that to Hopewell. In particular, with respect to the auto attendant greeting, which is this recording that Hopewell had made of CPST's auto attendant greeting, which referenced Moody Review shortly after the execution of the settlement agreement, there was no evidence of who heard the recording. The only evidence of anyone who heard the recording was Leo Oliver, who worked for Hopewell. Hopewell certainly at trial could have presented call logs of calls made to that number. They didn't do that. They could have presented customers who called that recording and heard that recording. They didn't do that. There was no evidence of anyone who heard that recording other than Mr. Oliver. And the notion that someone would call an auto attendant greeting, hear it, hear its reference to Moody Review, and then decide to do business with CPST rather than Hopewell is just nonsensical on its face. What Hopewell really wants the court to infer, what it asks the district court to infer, is that a single reference to Moody Review, and that's the only evidence in the record as to who heard that recording, vitiates the entire agreement and excuses Hopewell's obligation to make $400,000 in payment. What is this auto attendant? Is that an answering service or an answering machine? Your Honor, my understanding, and I did hear the recording, is it's, you know, when you call a number, immediately it would pick up and just direct you to, if you're calling for so-and-so, press 1. If you're calling for, you know, text message 2. Do we have that in the record? It is in the record, Your Honor. It was played at trial. But Hopewell is taking the position that it should be excused from making $400,000 in payments without showing any harm, and that's simply not appropriate. Harm is the primary factor that was looked at in the Hernandez case. It's a primary factor that most Texas courts review in assessing materiality, and Hopewell does not cite any cases where a material breach was found absent a showing of any harm. And in the instance that Mr. Patel gave of the person who was smoking, promised not to smoke, and he did, and that was a material breach, well, that was the only consideration that was given. And I do want to point out that that is most certainly not the case here. I talked about that in my initial brief, and Hopewell does make that assertion that the only promise that the Turner Party has made was not to use the Moody Review name, and that is not the case. The balance was significantly reduced in terms of the payments that would be owed by Hopewell to Mr. Turner. It was reduced from at least $1 million to $627,000. So that was substantial consideration given under the settlement agreement. The Turner Party has also agreed not to solicit or accept any work from more than 100 of Hopewell's largest clients. Now, in their reply, Hopewell says, well, that's not consideration because Mr. Turner was at one point the COO of Hopewell, and so he had a fiduciary duty not to solicit any clients. But I have never seen a Texas case that says that a non-solicitation agreement with a former executive fails for lack of consideration. If that was the case, that would be news to a great number of labor and employment attorneys across the state of Texas. There's a reason why Hopewell insisted on that non-solicitation agreement. It was valid consideration, and they wanted that, and they got it in the agreement. And there was never any allegation by Hopewell that Mr. Turner ever breached his non-solicitation obligations. The other consideration that Hopewell received through the settlement agreement was that the Turner Party's agreed to notify three of the largest customers of Hopewell that they could release payments to Hopewell. The Turner Party's had a security agreement in place with Hopewell, and they had exercised their rights under the UCC with respect to these three clients, and had told these three clients, do not make any more payments to Hopewell until our dispute is resolved. They agreed to the settlement agreement to inform those three clients, which were DNC, SCM, and Antico, to release those funds, and they did so. So Hopewell certainly received that consideration through the settlement agreement as well. So the court certainly analyzed the first two factors of the material breach issue when it found that there was no harm suffered by Hopewell. It also considered one of the other factors, which is the likelihood that the breaching party would cure its conduct. The court found, with respect to the voicemail recording, that the auto attendant recording was changed without prompting by Hopewell. Mr. Turner voluntarily changed it without being instructed to do so, and the record shows it's not entirely clear when that happened, but it was sometime between two weeks after the settlement agreement when the recording was made by Leo Oliver of Hopewell, and my client said within three months he would have changed it because the recording was made by one of his employees, she left, and he said that would have triggered in his mind to change the auto attendant recording. So on the issue of cure, which the likelihood that the breaching party would cure, that was assessed by the court because my client did in fact cure the alleged breach with respect to the voicemail recording. So that's what I wanted to talk about with respect to materiality, unless the court has any other questions on that. I did want to briefly address the election of remedies issue with respect to what was raised in the reply brief. The Hopewell claims in its reply brief that because, as we pointed out, we had pled some affirmative defenses for which the delay issue may have been relevant, but we did not put those in the pretrial order. My point in saying that we had pled them is Hopewell could not have been surprised by the fact that the delay issue came up at trial, because we had pled in our answer more than a year before trial that certain affirmative defenses for which the delay would have been relevant, but we did not include those in the joint pretrial order. So the point I was making was that Hopewell couldn't have been surprised, but since they weren't included in the joint pretrial order, they weren't at issue at trial. And the other thing I wanted to touch on on the election of remedies issue was the issue of prejudice. Hopewell asserts in its brief that it was prejudiced, but it doesn't say how. It introduced evidence on the first day of trial from Mr. Young as to why Hopewell had waited 17 months before it raised the voicemail issue. That's, so far as I can see, the only evidence it would have introduced. So it doesn't articulate any other evidence that it could or would have introduced with respect to the delay issue, so there couldn't have been any prejudice. And then the last thing I did want to raise is under the right for any reason rule, the same general facts which the court found with respect to the 17-month delay in raising the voicemail issue would support a finding of waiver, and waiver was pled in the joint pretrial order under the agreed propositions of law. Did you define waiver in some way in the joint pretrial order? Waiver in what way? The waiver was raised with respect to just the proposition of law that a party by intentionally foregoing an unknown right relinquishes that right, Your Honor. So it's our position that under the right for any reason rule that waiver would also support affirmance in this case. And that's all I have. Thank you, counsel. Thank you. May it please the Court. To briefly address this waiver issue, the apolies did assert waiver, but as an affirmative defense against Hopewell's affirmative claim for breach of contract. Hopewell had also sued as counterclaims under breach of contract. So waiver was raised, but as an affirmative defense, not as a counterdefense or a matter of avoidance against Hopewell's affirmative defense. That's the distinction. And the importance in terms of whether that was pled or not in the Election Remedies Doctrine is one of basic fundamental due process that the pleadings frame the issues for trial unless there's a finding of trial by consent, which this Court has held should be rarely inferred. To address the materiality factors and the arguments made about the trial court's analysis, I would turn the Court's attention to paragraph 77 through 81 of the trial court's findings and conclusions. That's where Judge Werlein discusses the reasoning for his decision that there was no material breach because of the auto attendant recording. That's where it is clear that Judge Werlein is using factors that are not related to the materiality factors that he does later state are the applicable law. So it's comparing his analysis to the stated factors that is the basis of our argument It's not that it's not a formalistic argument. Well, he didn't expressly say X, Y, and Z applies to this factor. Your position that those findings reflect that he incorrectly applied the law. He incorrectly applied the law. Indisputably, those facts establish that. The findings establish in our. He incorrectly applied the law. He incorrectly applied the law by using those findings as the basis of the decision that the breach of, based on the auto attendant, was immaterial. And these findings relate to, like the issues that I discussed before, whether Hopewell, you know, provided notice, whether Hopewell took action to mitigate, whether there was damages or harm. None of these factors are actually part of the materiality test under Texas law. It certainly is relevant that Hopewell can't or didn't prove damages if what we're here to discuss is whether Hopewell should get a money judgment. If Hopewell is asking for money and it can't prove damages, absolutely that's relevant. But in the context of an affirmative defense, Texas law, it's very clearly articulated that these are the materiality factors to consider and harm isn't one of them. Texas courts have been very good about enunciating damages as an element. Where it is an element in here, that's simply not the case. And it makes sense because it's an affirmative defense and not an affirmative claim for relief. If there are no further questions, then thank you again to the Honorable Court. Thank you, sir. Thank you, counsel. The case is argued this week. It will be taken under advisement. And this panel will adjourn. Signing.